UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA                    04 Cr 251 (KMW)

- against -

JOSE SUAREZ,                                MEMORANDUM OF LAW

Defendant

------------------------------------------------------X

## PRELIMINARY STATEMENT

This memorandum is submitted in opposition to the Government's allegations contained in the pre-sentence report and the attempt to prove those allegations in the *Fatico* hearing held on June 25, 2008. The Government failed to meet its burden of proof. The Government's sole witness at the hearing was Wendy Lantigua. Mr. Lantigua's testimony was so riddled with falsehoods, withheld information and inconsistencies as to render it unreliable in its entirety. However, even if Mr. Lantigua's testimony is fully credited, it failed to prove that Jose Suarez was a manager or supervisor subject to a three point enhancement under Section 3B1.1 of the Sentencing Guidelines.

## LANTIGUA'S TESTIMONY

The Court should discredit Lantigua's testimony because he constantly attempted to mislead the Court as to the extent of his own culpability, while attempting to exaggerate Mr. Suarez's role. For instance, on both direct examination and, initially, on cross examination, Lantigua claimed that he only delivered drugs to one person (transcript[1] at 35-36, 70). He later admitted, under cross examination that he delivered drugs to two people and claimed, falsely, that he had only been asked about deliveries on the day of arrest (t-70-71). On direct examination, Lantigua described the various jobs that were done in the apartment, but only took specific, personal responsibility for filling bags with heroin (t-73). He did not admit to being the person responsible for weighing the drugs until cross examination (t-77-78). He asserted on direct examination that Jose Suarez was Carlos's "right hand man" (t-39). When asked by the Court what he meant by that, he stated: "Well, that when Carlos wasn't there, and Carlos needed money or money arrived from the street, we, the workers could not touch it, only Jose, or Manny, or Carlos" (t-64). This, as demonstrated on cross examination, was a significant falsehood. Lantigua

---

[1]. Hereinafter "t".

admitted that he regularly "touched" the money as he was the only one of the workers trusted to see the person delivering the money to the apartment building. He had the additional responsibility of being called on his cell phone by the person delivering the money, meeting that person downstairs and bringing the money up to the apartment (t-76, 89-90). Lantiqua also admitted on cross examination that another of the workers, Flaco, touched and counted money (t-75). Lantigua, also, only admitted in the later part of his testimony to being the person that Manny had instructed to bring one of the two guns into the apartment (t-71).

This last falsehood was key to Lantigua's effort to exaggerate Suarez's role in the enterprise. According to Lantigua, there were seven people, including himself working in the apartment (t-24). He attempted to make Mr. Suarez appear to the Court as the person right under the two bosses, Manny and Carlos by falsely claiming that only Manny, Carlos and Mr. Suarez could touch the money. However, by the end of his testimony he had admitted that fully five of the seven participants were responsible for handling the money (t-75-76).

Additionally, Lantigua admitted that Suarez was a novice at the heroin business and actually fairly far down in the operations hierarchy. Unlike himself, who was skilled at pouring heroin into bags, Mr. Suarez was taping bags because he did not know how to fill bags and was being taught (t-73-74). Although Lantigua claimed he did not know how much his cousin, Manny, was paying Saurez, he admitted that the workers were paid according to their skills and that a worker who could pour heroin was paid more than a worker who was stamping bags (t-74).

The only other task, other than those done by everyone in the apartment, attributed to Mr. Suarez, was the purchase of a kilogram of heroin.. According to Lantigua, Suarez told Manny that he knew someone who could sell Manny a kilogram of heroin and Manny ordered Suarez to make the purchase (t-41, 80).

Lantigua's effort to mislead the Court as to his and Suarez's relative levels of culpability was also apparent in his attributing Suarez's status to his relationship to Carlos: "since he was Carlos' brother-in-law, Jose was the right-hand man of Carlos" (t-39); while minimizing his own status, even though he was a cousin of Manny, stating that they were "not very close" even though Manny had sent him money in Santo Domingo when Lantigua requested it (t-71). It also became apparent on cross examination and re-direct examination that Lantigua's cousin Manny, not Suarez's brother-in-law Carlos, was the primary boss in that Manny paid all the workers, including those brought in by Carlos (t-88-89).

**ARGUMENT**

None of the behavior attributed to Jose Suarez rises to the level of being a supervisor or manager. To qualify for this enhancement "the defendant must have been the organizer, leader, manager or supervisor of one or more other participants" and be one who "exercise[s] some degree of control over others involved in the commission of the offense." *United States v. Liebman*, 40 F.3d 544, 548 (2d Cir. 1994)(quoting, *United States v. Cantero*, 995 F.2d 1407, 1414 (7th Cir. 1993); *United States v. Fuller*, 897 F.2d 1217, 1220 (1st Cir. 1990)). There was no

testimony that Suarez controlled anyone else. Everything that Lantigua testified that Suarez did, was at someone else's behest. This included the purchase of the kilogram of heroin that Manny ordered Suarez to complete. "Supplying drugs and negotiating the terms of their sale do not by themselves justify a Section 3B1.1 increase." *United States v. Vargas*, 16 F.3d 155 (7th Cir. 1994). There simply was not one iota of evidence that Jose Suarez controlled a single other person. He should, therefore, not be subject to the supervisor or manager enhancement.

## CONCLUSION

For all the above reasons the defendant respectfully submits that the entire testimony of Wendy Lantigua should not be credited. Even if the Court decides to credit some or all of the Lantigua testimony, the Court should find that the Government did not meet its burden of proving that Jose Suarez was a supervisor or manager, subject to a Sentencing Guidelines enhancement under Section 3B1.1.

Dated: New York, New York
August 13, 2008

Respectfully submitted,

*Russell T. Neufeld*

Russell T. Neufeld
Attorney for Jose Suarez
(646) 613-8359

cc.: A.U.S.A John J. O'Donnell
By ECF and U.S. Mail